F. O. ADAMS, Administrator, Appellee, v. NEW YORK
BOWERY FIRE INSURANCE COMPANY,
Appellant.

1. **Arbitration and Award**: AGREEMENT: PERFORMANCE. A policy
of insurance against fire provided that in the event of disagreement
as to the amount of any loss thereunder, the question should be sub-
mitted to two competent and disinterested appraisers, the insured
and the insurance company each selecting one, and the two so chosen,
having first selected a competent and disinterested umpire, should
then estimate and appraise the sound value and damage, and failing
to agree should submit their differences to the umpire, and, that the
award in writing of any two should determine the amount of such
loss. *Held*, that a submission to arbitrators which *did not provide*
for the selection of an umpire before beginning the work of appraise-
ment, but only in the event of its becoming necessary, and which
required the appraisers to estimate only the loss or damage to that
part of the insured property which had been saved in a damaged con-
dition, was a material variance from the terms of the policy, and
constituted no defense to an action thereon.

2. ———: OMISSION OF ARBITRATORS TO CONSIDER MATTERS SUB-
MITTED. The submission to the arbitrators being accompanied by a
schedule of the property in question, *held*, that the omission to
appraise some articles included therein through mistake, and certain
other articles because, in the opinion of the appraisers, they were
not covered by the policy, was unauthorized, and rendered the award
invalid.

3. ———: ———. At the time of the submission, the appraiser selected
by the defendant received from the company a schedule of the prop-
erty in question, which the plaintiff had sent the defendant with his
proofs of loss. The plaintiff learning of such fact thereupon furnished
the other appraisers with copies of said schedule. *Held*, that both
parties were estopped from denying that the schedule had been fur-
nished as a part of the submission.

4. ———: WAIVER: RIGHT OF ACTION. Having entered into an agree-
ment of submission to arbitrators not in accord with the provisions of
the policy, and stood upon the validity of an award thereunder, *held*,
that the defendant had waived the right, if any existed, to insist
upon an award in accordance with the terms of the policy before
suit could be commenced thereon.

5. **Fire Insurance**: LOSS: EVIDENCE. The award of the arbitrators
being invalid, *held*, that in an action upon said policy evidence of the
value of the property insured was properly received.

6. ————: POLICY: CONSTRUCTION. Under a policy of insurance against fire covering "tools used in the manufacture of boots and shoes," the insured is entitled to recover for the loss of "patterns" for making boots and shoes.

*Appeal from Des Moines District Court.*—HON. CHARLES H. PHELPS, Judge.

TUESDAY, MAY 10, 1892.

ACTION on a policy of insurance covering certain personal property. From a verdict for the plaintiff the defendant appeals.—*Affirmed.*

*D. J. Schuyler* and *Power & Huston,* for appellants.

*C. L. Poor,* for appellee.

KINNE, J.—The petition alleges the issuing of the policy, the destruction by fire of a part of the property insured, and damage to the remainder of it; that the plaintiff, as administrator, was at the date of the policy as well as at the time of the fire the sole owner of the property insured; that the loss was nine thousand and twenty-three dollars and ninety-three cents, and that due notice and proof of loss were furnished the defendant. A copy of the policy is attached to the petition, from which it appears that the policy ran to the "estate of A. G. Adams," and was for thirty-five hundred dollars. The material parts of the policy are as follows:

"The New York Bowery Insurance Company, in consideration of the stipulations herein made, and of thirty-three dollars and twenty-five cents, does insure estate of A. G. Adams for one year from the sixth of March, 1888, to an amount not exceeding thirty-five hundred dollars on fixed and movable machinery, shafting, belting, gearing and pulleys, hangers and tools used in the manufacture of

boots and shoes, all contained in the three-story brick, metal roof building and basement, southwest corner of Valley and Third streets, Burlington. Other insurance permitted. The company shall not be liable beyond the cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deductions for depreciation, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality. In the event of disagreement as to the amount of loss, the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire. The appraisers together shall then estimate and appraise the sound value and damage, and, failing to agree, shall submit their differences to the umpire, and the award in writing of any two shall determine the amount of such loss. No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity until after full compliance by the insured with the foregoing requirements. This policy is made and accepted subject to the foregoing stipulations and conditions."

The answer admits the issuance of the policy for the amount stated in the petition, and on the terms and conditions expressed in said policy, admits the fire and that the property was damaged, and denies all other allegations in the petition. It avers that the contract was with "the estate of A. G. Adams:" that A. G. Adams died intestate prior to the issuance of the policy, leaving a widow and children; that the estate was solvent, and that the heirs are entitled to a distributive share thereof, including the avails of this policy; that the plaintiff is not a party to the contract and cannot maintain an action thereon; that the policy provides

that if there should be other insurance on the property the defendant should not be liable for any greater proportion of said loss than the same insurance bears to the whole amount of insurance; that there was other insurance to the amount of six thousand eight hundred and fifty dollars, and the amount of said loss, if any, due the plaintiff is not equal to the amount of the policy or the amount claimed. · It is further averred that the policy provides that in case of disagreement as to the amount of loss, it should be determined by competent and disinterested persons to be selected by the parties to the contract, and that their action should be final and binding as to the amount of damage, but as to no other fact; that such persons. were selected and fixed the damage at two thousand six hundred forty-five dollars and seventy-three cents. The plaintiff replying, admits that A. G. Adams died intestate prior to the issuance of the policy, leaving heirs, as claimed in the answer; alleges that the claims against the estate have not all been paid, and that the estate is insolvent; that the plaintiff as administrator, contracted with the defendant for the insurance in controversy, paid therefor, accepted the policy, that both parties at the time and ever since have treated the policy as being for the benefit of the estate, and that the plaintiff was its sole representative and authorized to effect the insurance and sue therefor; that the defendant has always recognized the plaintiff as authorized to represent said estate in said matter, and that said insurance was intended for the use and benefit of the plaintiff as legal owner of the property. He avers that the award is void for the following reasons: Because not made in conformity to the terms of the policy; on account of the gross partiality of the representative of the defendant and of the ignorance of the arbitrators; and because the plaintiff was not permitted to testify and have other witnesses testify before such

arbitrators; because the award was made on Sunday, and for other reasons. That the plaintiff notified the defendant that on account of such matters he would not abide by the award, and asked the defendant to join him in the selection of other and impartial appraisers to appraise the property lost, and the defendant refused so to do. In an amendment to the petition the plaintiff claims to have furnished the defendant proofs of loss which the defendant received and acted upon as sufficient, and that the defendant by its acts in offering to compromise the loss disputed the amount claimed in said proofs, thereby compelling the plaintiff to incur expense in efforts to have the damage appraised and is estopped from now objecting to the sufficiency of said notice and proofs of loss. The defendant, in an amendment to its answer, avers that by the terms of the policy the assured agreed to "protect the property from further damage," in case of fire, and that the plaintiff failed and neglected so to do, whereby said damage was greatly increased.

I. The defendant pleads an arbitration and award had under the policy sued upon and insists that such award is conclusive upon the plaintiff, and hence the court erred in admitting evidence as to the value of the goods and other evidence which tended, as it claims, to impeach the award; also in giving certain instructions to the jury in relation thereto. It will be seen that the defendant does not plead a common-law submission and award, but bases this defense entirely on a submission and award had in accordance with the provisions of the contract of assurance; hence it becomes material to inquire as to whether or not the submission in fact made, and which was followed by an award, was in accordance with the provisions of the policy in suit. By the terms of the policy, in the event of disagreement of the parties as to the amount of the loss, it was to be

1. ARBITRATION and award: agreement: performance.

ascertained "by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire. The appraisers together shall then estimate and appraise the sound value and damage, and, failing to agree, shall submit their differences to the umpire, and the award in writing of any two shall determine the amount of said loss." The loss or damage was also to be estimated according to the actual cash value of the property, allowing proper deductions for its depreciation. The submission entered into by the parties did not follow the provision of the policy in this: The submission did not provide for the selection of any umpire before the work of appraisement was proceeded with; it only provided for the selection of an umpire in the event it became necessary. The submission also provided that the appraisers should estimate only the loss or damage to that part of the insured property which had been saved in a damaged condition, thereby excluding from their consideration any estimate of the amount of the plaintiff's loss on property totally destroyed. This alone was a material and fatal variance from the terms of the policy, which, by any fair construction, must be held to cover all loss or damage to the property insured, whether total or partial. The submission and award pleaded, not being in accordance with the terms of the policy, are no defense to this action.

II. It appears that the schedule accompanying the submission, as made out, included many articles which

2. ——: omission of abitrators to consider matters submitted.

were not appraised, and other articles embraced within the schedule were held by the appraisers not to be covered by the terms of the policy, and hence were not appraised. Clearly the appraisers were not authorized to exercise their judgment as to what was or was not included within the policy. That was a matter the parties

themselves had already determined by the terms of the submission and the schedule which was placed in the appraisers' hands. They were to appraise certain articles. They only appraised a part of them, and they undertook without a shadow of authority to determine that certain articles in the schedule were not covered by the policy. Under such circumstances, to hold the award binding (even if the submission had followed the terms of the policy) would not effectuate the intent and agreement of the parties as evidenced by the submission and the accompanying schedule. The law is well settled that an award will be set aside for such material mistakes and errors as prejudice either party; and it will also be set aside if the arbitrators "omit to consider matters which were submitted" to them. *Thompson v. Blanchard,* 2 Iowa, 44.

III. It is insisted that no schedule was attached to the agreement of submission. This may, perhaps, be conceded, but it clearly appears that the appraiser selected by the defendant had a schedule, and the same one which the plaintiff had furnished the defendant a long time before he sent them his proofs of loss. This schedule, having been traced directly to the defendant and next found in the hands of its appraiser, it is fair to infer that it was given to him by the defendant as embodying what it intended should be appraised. The fact that the defendant's appraiser had this schedule came to the plaintiff's knowledge, and he then furnished the others with duplicates of it. Thus it will be seen both parties treated the schedule actually in the hands of the appraisers as if it had passed to them as a part of the submission itself, and neither can now be heard to say that no schedule was furnished the appraisers.

IV. The submission provided for the appraisement of the property "article by article." The provision was

partially ignored, and though the evidence shows the estimate was so made in fact by the appraisers, yet in many cases the appraisement of several articles when written down was carried out in one gross sum, so that from the paper itself it could not be ascertained what the appraisement on a particular article was. Other objections are made by the plaintiff to the appraisement, which, in the view we have taken of the case, need not be considered.

V. The defendant claims that by the terms of the policy the making of an award was prerequisite to the bringing of a suit by plaintiff. If this should be conceded (and this we do not decide), it is competent for a party for whose benefit a provision in a contract is made to waive it. By entering into an agreement of submission not in accord with the provisions of the policy, and standing on the validity of an award made under such submission, the defendant must be held to have waived the right (if it had any), to insist that an award must be made in accordance with the terms of the policy before suit could be commenced thereon.

4. ——: waiver: right of action.

VI. On the theory that the submission followed the provisions of the policy, the appellant excepts to the introduction of certain evidence relating to the value of the insured property. Holding, as we do, that the submission pleaded is not in accord with the agreement of the parties as evidenced by the policy, this evidence was properly admitted.

5. FIRE INSUR-ANCE: loss: evidence.

VII. It is said that "patterns" for making boots and shoes are not especially mentioned in the policy, and hence no recovery can be had therefor; the appellant claims the policy contains the clause: "The company shall not be liable for loss * * * unless liability is subsequently assumed for models, patterns," etc. No such clause is found

6. ——: policy: construction.

in so much of the policy as is set out in the abstract. The words, "tools used in the manufacture of boots and shoes," are found in the policy. Webster defines a "tool" as "any instrument, such as a hammer, saw, plane, file, and the like, used in the manual arts, to facilitate mechanical operations; any instrument used by craftsman or laborer, at his work;" and again, as "any instrument of use or service." Under a policy containing the same provisions which the appellant insists this does, "patterns" have been held to be "tools." *Lovewell v. Winchester Fire Insurance Co.,* 124 Mass. 418.

Many other questions are discussed which we need not consider, in view of the conclusion heretofore reached. We have examined them all, as well as the instructions asked and refused, and those given by the court, and find no reversible error. The judgment of the district court is AFFIRMED.