PHŒNIX INS. CO. OF HARTFORD, CONNECTICUT, v. CHARLES J. ROMEIS.

1. ATTACK ON AN AWARD OF APPRAISERS MAY BE MADE IN THE SUIT ON A POLICY OF INSURANCE. PLEADING AND EVIDENCE.

An award of appraisers, made in pursuance of a condition in a policy of insurance, upon disagreement of the parties, which award assured claims to be invalid on the ground that the appraiser selected by the insurance company was incompetent, interested, prejudiced and biased, need not be attacked in a separate action, to be brought before suit on the policy can be maintained. It may be adjudicated in such action and where the defendant's answer presents the award as a defense to the suit on the policy, the attack on the award is properly presented in the reply. And the court may allow the proof to follow the order of the issues made by the pleadings but it is not error for the court to require plaintiff, in order to attack the award, to offer his evidence bearing upon that point in connection with his other evidence in making out his case.

2. VALIDITY OF THE AWARD MAY BE DETERMINED BY THE COURT BUT SUBMITTING IT TO JURY NOT PREJUDICIAL, WHEN—

And while the question of the validity of the award might have been determined by the court yet submitting it to the jury could not have been prejudicial to the defendant, and particularly so inasmuch as the court, in passing upon a motion for a new trial, necessarily passed upon that issue.

3. MEANING OF PROVISION RELATIVE TO APPRAISAL OF PROPERTY DAMAGED BY FIRE.

The provision that competent and disinterested persons shall "estimate and appraise the loss, stating separately sound value and damages," means that the appraisers are to state separately the sound value and damage to each and every article injured by the fire, not the sound value and the damage to the stock of goods insured.

4 REPORT OF APPRAISERS INVALIDATED BY THEIR INABILITY TO KNOW OR ESTIMATE VALUE OF PROPERTY TOTALLY DESTROYED.

And a report setting forth the damage to the articles in existence, stating a gross sum, and containing a statement that this included the articles totally destroyed by fire, without stating what they were, made without calling for testimony, is invalid for the reason that the appraisers could not, by the process adopted, know the number, character, quality or value of the articles totally destroyed.

5. STATEMENTS OF APPRAISERS AFTER APPRAISAL, TOO REMOTE.

Statements made by the appraisers during the appraisal are competent, but evidence detailing on the following day what one of the appraisers said that the other appraiser said, is incompetent. It is too remote.

ERROR to the Court of Common Pleas of Lucas county.

KING, J. (orally.)

June 22, 1896, defendant in error was insured by the Phoenix Insurance Company for $2,000. June 28, 1896, a fire injured the stock of goods insured and destroyed a part. There was other insurance upon this stock of goods amounting to $5,000. A suit was brought in the court of common pleas to recover of the Phoenix Insurance Company a two-sevenths part of the loss alleged to be $1,901.42, with interest from October 26, 1896.

To the petition there was an answer and a reply to the answer. Afterwards a trial was had, at the September term, 1897, which resulted in a verdict for the plaintiff for $2,010.94, upon which verdict a judgment was rendered for that amount, after the overruling of a motion for a new trial, and it is brought here and we are asked to reverse that judgment.

We have given quite an extended consideration to the case, because it involves a great many questions, and some of them important ones. The variety and number of exceptions in the record will preclude our noticing them in detail. Those which we deem it necessary to notice may be classified as follows:

1. It is claimed that there was an appraisement entered into by the parties under this policy, the result of which binds both, and that an action could not be maintained upon the policy until the appraisal was first set aside, in a separate action, or by a separate cause of action included in the same petition, and heard and determined by the court before and apart from determining the other issues of fact in the case.

2. That the court erred in permitting evidence to be offered under the petition as drawn attacking the appraisal and in submitting this evidence to the jury along with the other issues in the case.

3. That the verdict as returned by the jury upon that question, is not sustained by the evidence.

4. It is claimed that the plaintiff should not have recovered because he had not complied with certain conditions of the policy precedent to the right to maintain an action—that is that he did not make proper proof of loss as required by his policy; and next, that he did not submit to an examination under oath, nor produce his books and papers, as required by the terms of the policy.

5. That improper evidence was admitted on the part of the plaintiff below.

6. That the court erred in its charge to the jury.

7. That the amount of the verdict returned by the jury is excessive.

1. Taking them in order I have named, the first question arising is whether the pleadings have properly presented the issue which the court heard and submitted to the jury? The petition alleged the loss, the issuing of the policy, the fire, the amount of the loss, failure of the company to pay; that plaintiff had performed all the conditions on his part, and asked for judgment.

The answer of defendant admits the issuing of the policy, the amount of the insurance, substantially as it was in the petition—admits that a fire occurred and that the stock was damaged.

It denies the other allegations of the petition, and says, among other things and as a third defense, that the policy contained a condition whereby it was agreed that in the event of disagreement as to the amount of loss, the amount should be ascertained by two competent and disinter-

ested appraisers. It quotes that item of the policy and then alleges that a disagreement did arise between the parties, and that the plaintiff and defendant entered into an agreement in writing—and which agreement also included the other insurers—for submitting to appraisers the amount of this loss; that thereupon the plaintiff appointed a person and the defendant appointed another to act for it and the co-insurers; that the agreement was signed and thereupon the persons named entered upon the discharge of the duty of appraisal and did appraise the loss, which appraisement they signed and duly verified.

The answer alleged that they found the amount of damage to this stock of goods to be $2,660.77. It does not say anything further about the amount, but if it were carried out it would be found that upon that the plaintiff would be entitled to recover about $760.22, with interest from the date named in his petition, which would perhaps make about $800, all together.

To this answer there is a reply conceding the allegations contained in the answer: that there was this provision in the policy, that the parties had entered into an agreement to appraise this property, and going on further to say that the appraiser selected by the insurance company was incompetent, interested, prejudiced and biased, and setting up several other things as objections to him and alleging that they did not return a proper, fair, true or just appraisement, that the appraisement was invalid for these reasons and ought to be set aside.

It is said, as I have before suggested, that this ought to have been the subject of a separate action, or brought as a separate cause of action, and first determined in this case. A great many authorities have been cited by counsel on both sides, which we have examined, and have come to the conclusion upon that question that this action was properly brought. We do not decide or hold that it might not have been differently brought and properly so. We would not undertake to hold that it would not have been proper pleading for the plaintiff to allege in his petition the making of the appraisement and the award of the appraisers, and then assert that it was invalid for the reasons assigned, and ask to have it declared invalid and set aside, and proceed on that line. There are cases that have proceeded on that line, in states adopting a system of pleading like ours, and, such a case as that is the case of Bradshaw v. Insurance Co., 137 N. Y., 137, but there is no decision on the precise point of pleading contained. There are some cases that are somewhat in point on the subject, and we are disposed to follow them. The first I refer to is the case of Davis v. Insurance Co., 16 Wash. Rep., 232. Action was brought, as in this case, and the answer was the same as in this case, followed by a reply attacking the award of the appraisers. This action the court held was entirely proper. I have not time, and it would not probably be profitable, to read from that case, but it is very interesting and a great many authorities are cited, deciding the question squarely and giving sound reasons for it. The case of Kahnweiler v. Insurance Co., 67 Fed., Rep., 483, decided by the circuit court of appeals district of Kansas is an interesting case, and the decision is sound, as we view it. There is the case of Robertson v. Scottish Union etc., Ins. Co., 68 Fed. Rep., 173, along the same line, in which they distinguish certain cases in New York and North Carolina from a case decided in Virginia, but holding that in Virginia, under the practice there prevailing—the common law system of pleading—that a separate action would be required. To the same effect is a case

636     OHIO CIRCUIT DECISIONS.    Vol.

Lucas Circuit Court.

of Adams, Admr. v. Insurance Co., 85 Iowa, 6, although the question is not squarely determined as to the matter of pleading; but in that case the action was as in the case at bar, and the defense set up in the answer that the matter had been adjusted by appraisers and that the plaintiff had no cause of action upon the policy and it was insisted that he could not recover upon the policy, because there had been an appraisal, but the court held that he could. To the same effect is Sears v. Insurance Co., 140 Mass., 343, and I think it a very pointed case upon this question. There they hold that in an action where it was claimed by the plaintiff that the action of the appraisers was for any reason invalid so that the appraisement would be set aside by the court, that it might be so treated by the plaintiff, and that the action was properly brought upon the policy and not upon award of the appraisers, and, on page 345, the court say:

"The jury have found that the award which the defendant relies on is invalid. It can therefore have no effect upon the rights of the parties.

"But if it had been a valid award, it could not, as contended by the defendant, prevent the plaintiff from maintaining his suit upon the policy. The award has reference merely to the damages. The agreement of submission merely refers to arbitrators the appraisal and estimate of the damage by fire to the plaintiff's property, and expressly provides that the award shall have no reference to any other question or matter of difference, and shall be of binding effect only so far as regards the actual cash value of, or damage to, such property. A valid award under this submission might be evidence of the damages in an action upon the policy; but it is too clear to admit of any discussion that the only action of the plaintiff must be upon the policy, and not upon the award."

Perhaps in that case the award would not have the same effect as it would have had in this case if it had been valid, but the authority, I think, is very pertinent to this question; so that we can hold, based upon good authority, that the action was properly brought. The defense came in properly in the answer and the attack upon the award is placed in the reply.

2. Now under this condition of the pleadings the court might well have allowed the proof to follow the order of the issues made by the pleadings. But upon the trial, the court required the plaintiff, in order to attack this award of the appraisers to offer his evidence bearing upon that point in connection with his other evidence in making out his case. There was no error committed by the court in the making of that order—certainly none to the prejudice of defendant—it simply required of the plaintiff to put in all the testimony that he had bearing upon all the issues in the case, in the first instance, and the defendant then would have the advantage of knowing what that evidence was and could then answer. In this connection it is said that the court erred in submitting that evidence to the jury; that although the pleadings might be proper and it be entirely correct to attack this award in an action brought to recover for the amount of the loss, yet the question of validity should have been determined by the court and not submitted to the jury. We think the court might have determined that. But, again, its action in submitting the question to the jury, could not, by any process of reasoning, be prejudicial since the evidence submitted to the jury was also submitted to the court, and the court in passing upon the motion for a new trial necessarily passed upon these issues, so that it was passed upon twice—the defendant had two tribunals to decide the question r̤ ͘·ᵉr

than one, and one of these is the one which it claims should have heard and determined it alone. The statute, sec. 5131, as well as the practice in courts of equity allows the court to submit any question—any issue of fact—to a jury. We hold that there was no error in submitting this question as it was submitted to the jury.

3. This brings us to the question whether this verdict, upon that point, is sustained by the evidence? We are constrained to hold that it is. We could not hold otherwise. There are several reasons for this. I will say here that—curiously enough—neither the insurance policy nor agreement to arbitrate is found in this record, and the only point which is made about that is, that the bill of exceptions while it purports to set out all the evidence, does not set that out. However, that can hardly be essential since the question is raised by the answer and reply. The answer alleges that the policy contained this agreement:

"In the event of disagreement as to the amount of loss the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire, the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss; the parties thereto shall pay the appraiser respectively selected by them and shall bear equally the expenses of the appraisal and umpire."

The agreement was made then to submit this loss to competent and disinterested appraisers. That was the agreement in the policy. I take it that they did not make any other contract when they came to make the agreement of appraisement. Now the evidence tends to show in this case that the appraiser appointed by the insurance company lived at Columbus, Ohio, and that he was sent for by the company to come to the town of Alexandria, Indiana—in another state—to appraise this loss. It tends to show that he had previously acted for this company in the same capacity. It tends to show that while present and acting as appraiser he effectually dominated and controlled his co-appraiser, that he usually had the last word and what he said was adopted. Now, there is, in our judgment, enough of this sort of evidence to sustain the verdict of the jury, and holding that this appraisement for this reason was invalid. See 131 N. Y., 131. But we do not care to rest the decision upon that. Referring to the agreement as contained in the answer—after referring to the appraisers as "competent and disinterested persons," it says: that they "shall then estimate and appraise the loss, stating separately sound value and damage." What does that expression mean? Obviously it means that the appraisers are to state separately the sound value and the damage to each and every article injured by the fire—not the sound value and the damage to the stock of goods insured, but to the articles thereof. Otherwise, these gentlemen are not appraisers at all—they are judges; they constitute a jury; they are arbitrators to determine the amount of loss rather than the particular injury that may be traced to each and every article.

Again, if they are to determine all the loss, both that upon the injured articles and that which is represented by no injured articles—in other words, where there are articles that are entirely wiped out of existence, if they are to find the loss of stock, to that extent they become tryers of a question of fact and must get evidence. It is argued by

plaintiff in error that it would have rendered their finding absolutely void if they had called witnesses before them or had investigated other facts than those which their eyes disclosed. Then it must follow that they were not there to do anything, but to appraise the damage to the articles which were still in existence. They undertook, however, in this case to do more: they did set forth the damage to the articles in existence and stated the amount of the whole that they found—stating a gross sum—and wrote in their report that this included the articles totally destroyed by fire—but what they were they did not say—finding that the total damage or loss to the stock—and not to the articles—was twenty-six hundred and some odd dollars, and they signed the report and went away. Now that report was invalid for the reason that the appraisers could not, by the process adopted, know the number, character, quality or value of the articles totally destroyed. The evidence in the record was overwhelming that there were articles that were entirely burned; and there were others like hats, of which there was only left the piece of wire that went around the rim. These appraisers could not tell the kind of goods they were, what they were worth or the condition they were in before the fire, without calling for testimony— without inquiring of somebody who knew about it—or without getting hold of some books, papers or invoices and arriving at it by the best means possible. We do not find it necessary to hold that they had not power to do that, but we do hold that they did not undertake to do it in this case—they did nothing which would enable them to find the value of the property totally destroyed. Further, the evidence shows beyond doubt that the plaintiff below was present in the town at the time of the appraisement; that he had seen the appraisers, together with his local attorney, and had informed them that he had his books and papers showing his invoices for many of the goods which were in the store, and was ready to produce them at any time. He was informed by these appraisers that when they wanted him they would notify him. He waited at his boarding place during the day until evening, and then found that they had signed their appraisal, left it at the hotel and fled the town. Now for that reason we think this verdict was fairly supported by the evidence, —because, as I have said, this was not an appraisal.

4. It is urged that other specific conditions of the policy were not complied with by the insured. The proofs of loss are a part of the record in the case. We think the plaintiff furnished proper proofs of loss. He furnished them within sixty days—at least no complaint is made on that point. They were sworn to within sixty days and appear to be proper on their face, and there is no evidence of any kind that the company ever objected to them: on the contrary, it proceeded to demand, as it might under this policy, an appraisement of the property and they appointed their appraiser and entered into the appraisal of it after agreeing that the statement of the appraisers should govern and is here insisting that it shall govern.

Second, it claims that the defendant did not submit himself and his books for examination. I have referred to what he was ready to do when the appraisers were there. I do not find in the record that the company made any other demand upon him at any other time to present himself or to bring his books and papers for examination; but he was there at the time named and ready and the appraisers would not hear him. Therefore that will not be sufficient.

5.   The next objection is, that improper evidence was admitted. There are two or three hundred objections and exceptions to the evidence in this record.   We do not think any of them are worthy of discussion except what I will refer to more particularly—found on pages 127 and 128.   The plaintiff on the witness stand testified that the next day after this appraisal was made he was at his attorney's office and the appraiser who had been selected by him came in—Mr. Pilger by name—and he states who were present and then says he had a conversation with Pilger in the presence of the witnesses named —"In the presence of the parties I spoke of there, in Judge Ryan's office, I asked him the question what he meant by his conduct, and about deceiving me as he did."

"Q.   In what respect, referring to what?   A.   That he and Mr. Boyd had agreed to send for me, to inquire for my books and papers, and which they did not do.

"Q.   What answer did he make then?   A.   He said, in the presence of the other parties, that Mr. Boyd, when he asked that I be sent for, said to him:   'Now, that is useless; it won't make any difference what his books say or what his papers indicate or what person he would bring into this before us.   I have made up my mind not to give him a cent more.' "

These questions were all objected to, and motions made to strike out, which were overruled.   Now that objection is preceded by an objection to testimony concerning anything that took place at the time of the appraisal.   The secretary or clerk of the appraisers was called and testified to some things which were said during the appraisal, and that was objected to.   We are inclined to hold that that was competent evidence; but, when we come to the detailing, on the following day of what one of the appraisers said that the other appraiser had said—we cannot doubt but that it was incompetent to admit that—it was erroneous. You could not impeach this appraisement by proof of what these appraisers had said about it after they had finished it.   What they said about it while engaged in making the appraisal, we understand would be competent, because it goes with the act—it is a part of the act, and tends to explain it—and if anybody heard that and was himself called as a witness, he might testify to it; but after they had completed their work and been discharged, we doubt if what either said could be offered in this secondary manner, and certainly it is true that the plaintiff could not offer to prove what one of them had said in relating what the other one said— that it too remote.   But while holding it incompetent, that does not dispose of it, for we do not think it was prejudicial.   I have indicated in discussing the preceding question, that we consider the record here as showing that this appraisal was absolutely invalid.   There is not a particle of evidence to dispute the claim of the plaintiff as to how it was made up, and the evidence shows plainly and distinctly upon its face that it was invalid, for the reason which I have before discussed, and hence all of this evidence objected to was merely incidental and immaterial.

6.   This brings me to the charge of the court.   A great deal of this is disposed of by the same observation.   The court could have said to the jury in a couple of lines as a matter of law that this appraisement was not properly made and they should disregard it.   That would have disposed of a good share of this charge and the objections which are made to it.   There is no conflict in this evidence; there is no question that this was not an appraisement of the loss or damage to this property.   II

the appraisers attempted to guess at it they had no business to guess, because they were bound to ascertain the amount of loss from the sources of knowledge best attainable, if they are required to pass upon that question at all. This appraisement then was never made, and it might have been so treated by the court, and undoubtedly was so viewed by the jury. Justice would require that it be set aside. Arrived at in the manner in which it was, it does not deserve a moment's consideration.

Some criticism is indulged in by plaintiff in error because the court has made use of certain words which did not seem to be proper; in other words, the court used a number of different words to express perhaps the same thing. It is said that the court referred to these men, in describing what should be their qualifications, by saying that they should be capable, qualified, disinterested, fit, unbiased, etc., those all referring to the same thing. They might be collected under the terms in the policy, as competent and disinterested. The word "competent" as used by the court, could not have referred at all to the mere qualifications of these men. No attack was made by the plaintiff or by anybody else upon the qualifications of these appraisers. Either of them might have undertaken to and have told the value of goods like these, this no one for an instant doubts. The incompetency, or the interest shown, is manifest by the result of their work—the fact that they did not give due weight to the facts which would make for the one party and against the other and gave undue weight to facts which were in favor of one party and against the other, that would render them, within the terms of the policy, either incompetent or interested, and it did not make any difference which, the final result of it is to render their work invalid. The question to be arrived at ultimately is whether the appraisement was properly made? And, as we have said, it was not properly made, for the very good reason that these men did not undertake to make an appraisement at all; they simply omitted to appraise, because they could not appraise goods which were not in existence without getting knowledge of those goods from some source, and that knowledge they did not have and did not seek to acquire. So it is that in this appraisement they were either "incompetent" or "interested." If this was a disputed question in the case it would be necessary to submit it to the jury—with some qualifications. I may say that we would not be inclined to hold that a party insisting upon an appraisal may repudiate it on the ground of the incompetence of the appraiser selected by him; if such incompetence was known to him; but, as I have said, the incompetence—referring to the qualifications or capacity—was not here made a question at all. Hence it would have been sufficient for the court to say to the jury that this appraisal need not be regarded by them, and therefore, what the court finally said in discussing it is immaterial.

The other exceptions and arguments which have been made I have not had time to notice, but we do not regard any of them as erroneous in the sense that they should call upon us to reverse this judgment

7. The parties in this case seem to have been antagonistic in more senses than one, if we may judge from the arguments which were made before us. The result of that was the jury seem to have found for the plaintiff and did not pay very much attention to what they found; and, under some circumstances, perhaps the court would be inclined to favor such a result, but we must view these facts as we find them.

We have gone over this record pretty carefully to see whether the verdict in amount- is supported by the evidence, and we think we may

say that it is not. We find that the amount of the inventory upon which the plaintiff based the amount of goods which he had in the store at the time of the fire—the inventory taken in 1895, is $6,208.43. The amount of goods which he thereafter purchased to the time of the fire was $5,056.12; included in these amounts are $237.00 goods returned and $178.85 counted twice, leaving $10,848.80 worth of goods which he had either in the inventory of January, 1895, or had thereafter purchased.

From the time of the inventory of January 1, 1895, until the day of the fire he had sold goods amounting to $6,500.96.

In arriving at the cost of those goods the plaintiff gets somewhat confused, but he swears pretty positively—and we think he meant it when he said it—that he sold these goods for an average profit of forty per cent.—he placing the figures so as to range from 33 1-3 per cent. to 45 per cent., as the average profit. He is then inquired of what these last goods cost when they were bought and he says $3,900, and after that he is in hopeless confusion as to how he arrived at it. He is asked what he means by 40 per cent. and his answer shows that he was either muddled or never knew. He says he arrived at it by getting the amount of goods sold and multiplying that by 40 per cent. Then, of course he is right when he says that $3,900 was the cost—but it would make the rate of profit, 66 2-3 per cent. We do not think he meant that; we think he meant to say that he added 40 per cent. to the cost price as his profit, and that would make the cost price of the goods sold $4,643.54, which would leave $6,205.26 worth of goods in the store at the time of the fire.

He says he allows five per cent. upon the value of those goods then in the store for depreciation; that some of them were some years old and some were new. We see no reason why that allowance would not be small enough. That would leave the value of the goods $5,895. From that, after the fire, he raked out of the embers and water goods which he says were of the value of $610, which amount he stands by, although he testifies that he failed to get that for them; but he proposed to take that upon himself and credits that amount. ' That would leave, according to our figures, $5,285 as the amount of this loss, of which the defendant is to pay two-sevenths which would be $1,510, and with interest from October 26, to the first day of the term of court—September 13, 1897 —would make the amount of the judgment which ought to have been rendered in this case $1,590.03

I should say that the amount of the verdict as rendered is somewhat larger than the amount claimed in the petition, which arose probably from their computing interest to a later date, but we think this verdict can only be supported for about $1,590; that it is excessive to the extent of $420.91.

Now I will say that in arriving at that and in making this computation we have done so with some hesitation. It is possible that in testifying in this case that the amount of his profit was 40 per cent., that the plaintiff has been honestly mistaken as against his own interest; it may be that he did not mean that and that the truth is that the cost of the goods was $3,900. But if we affirm this judgment we must hold that it was excessive to the amount of $420.91. We will, however, reverse it as being excessive and award a new trial unless the defendant in error will remit that amount and accept the sum of $1,590.03.

*Smith & Baker*, for plaintiff in error.

*Brown & Geddes*, for defendant in error.