SECURITY INS. CO. v. KELLY.   (No. 1180.)

(Court of Civil Appeals of Texas.   Amarillo.
May 30, 1917.   Rehearing Denied
June 27, 1917.)

1. INSURANCE ☞574(7) — ADJUSTMENT OF
LOSS—AWARD OF ARBITRATORS.

In an action on a fire policy, where an award made pursuant to the provisions of the policy was irregular in omitting to state separately sound value and damages, and in failing to contain an itemized statement of the damages, and the award was grossly inadequate and out of proportion to the actual loss on the house, all of the irregularities, together with the inadequacy of the award, *held* to authorize a finding that in making the award there was a mistake as to the amount, or that the appraisers intentionally found less than necessary to restore the building or cover the loss.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1433, 1434.]

2. INSURANCE ☞574(2)—LOSS—VALIDITY OF
AWARD—FAILURE TO SELECT UMPIRE.

Where a fire policy provided for the appointment of appraisers in case of disagreement as to the amount of loss, and required the appraisers selected by the parties to first select a competent and disinterested umpire, and that the appraisers then estimate and appraise the loss, stating separately sound value and damages, and, that if they failed to agree, to submit their differences to the umpire, and the award of any two should determine the loss, although, where the appraisers agreed to the award, the failure alone to select an umpire would be immaterial, while the third party to be selected was designated "umpire," the proper construction of the policy is that he was to act with the other appraisers and failure to select such umpire evidences an irregularity which had the result of making the proceedings ex parte on the part of the appraisers and is a circumstance which may be looked to in considering whether the award was fair.

3. INSURANCE ☞574(2)—LOSS—APPRAISERS—
AWARD—SUFFICIENCY.

Where there was no agreement that notice should be given of the time and place of the investigation by the appraisers to determine the amount of the loss under a fire policy or that either party should be present, the fact that no notice was given and no opportunity offered to the parties to present evidence would not of itself render the award invalid.

4. INSURANCE ☞669(13)—ACTIONS—INSTRUC-
TIONS.

In an action on a fire policy in which the defense was an award alleged to have been made under the terms of the policy, where the case was submitted upon special issues, and on the face of the proceedings the award was irregular, if not actually void, refusal of an instruction that in the absence of fraud, etc., the award was valid and binding was not error.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1781, 1782.]

5. INSURANCE ☞668(14)—SUBMISSION OF IS-
SUES—QUESTION OF LAW OR FACT.

In an action on a fire policy in which the defense was an award alleged to have been made under provisions of the policy, and all the issues of fact were covered by the instructions, an issue asking the jury to state whether the award was valid was properly refused, as it involved a question of law and fact.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1747, 1749, 1750, 1766, 1768.]

6. APPEAL AND ERROR ☞1050(1)—REVIEW—
PREJUDICIAL ERROR.

In an action on a fire policy in which defendant introduced an award alleged to have been made pursuant to the terms of the policy, plaintiff's casual statement, when called upon by plaintiff's agent for appraisement and requested to read the contract, that she did not then know that the clause authorizing the award was contained in the contract, but that she then read it, was not likely to have influenced the jury, and hence was not prejudicial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153, 4157.]

7. TRIAL ☞352(1)—SPECIAL ISSUE—AWARD
—FRAUD.

A special issue, "Did the appraisers, in awarding to the insured $398.65, on account of loss and damage to the building, intentionally allow her less under said item of the policy than it would cost to repair or replace the same with material of like kind and quality?" sufficiently submitted the question of fraud on the part of the arbitrators, and asked the jury to find in what it consisted.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 840.]

8. INSURANCE ☞499—FIRE INSURANCE—NA-
TURE OF DAMAGES.

In an action on a fire policy, recovery could not be had beyond the actual cash value of the property destroyed with deduction for depreciation.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1274.]

9. TRIAL ☞351(2)—FIRE INSURANCE—ACTION
ON POLICY—SPECIAL ISSUES—STATUTE.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1984a, regarding submission of special issues, if defendant desired a finding of the jury upon the cash value of the building, it should have requested a special issue to find such issue of fact, and by not requesting the finding practically left the question to the court to find the cash value.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 837.]

10. APPEAL AND ERROR ☞1062(1)—REVIEW—
HARMLESS ERROR—SUBMISSION OF ISSUES.

In an action on a fire policy in which the case was submitted on special issues, though recovery could not be had beyond the actual value with deduction for depreciation, an issue requiring the jury to find what it would have cost the insured immediately after the fire to repair or replace the building with material of like kind and quality was not reversible error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4212.]

11. INSURANCE ☞572 — ARBITRATION PRO-
CEEDINGS—RIGHT OF PARTY TO BE PRESENT.

Where the extent of loss under a fire policy was submitted to arbitration, as the terms of the policy did not exclude the insured from going before the appraisers, she was within her rights in so doing and making a request to be heard.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1422, 1423, 1427, 1429.]

12. TRIAL ☞350(1)—ACTION ON FIRE POLICY
—SPECIAL ISSUE.

In an action on a fire policy in which there was no evidence that the insured secreted any of the furniture in places where it could not be examined a refused issue as to whether the adjuster told the insured she might remove all her furniture was immaterial.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 828.]

13. TRIAL ⊗⇒350(1) — INSURANCE — ARBITRATION OF LOSS—AWARD—SUBMISSION OF ISSUES—OBJECTION.

The fact that the insured under a fire policy instituted a suit and does not rely on the award, but ignored it and assails it as unjust and obtained by fraud and partiality of the appraisers, is sufficient to show that she objected to it, and there was no necessity of submitting the issue whether or not she objected.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 828.]

14. INSURANCE ⊗⇒576(1)—FIRE INSURANCE—APPRAISEMENT—WAIVER.

The insurer, by standing on the validity of an award, waived any further right to demand additional appraisement.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1436.]

Appeal from District Court, Dallas County; W. F. Whitehurst, Judge.

Suit by Mrs. E. H. Kelly against the Security Insurance Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Thompson, Knight, Baker & Harris and Will C. Thompson, all of Dallas, for plaintiff in error. C. M. Smithdeal, of Dallas, for defendant in error.

HUFF, C. J. Mrs. E. H. Kelly, defendant in error, instituted suit against the plaintiff in error on an insurance policy issued January 14, 1912, for the term of three years, covering loss of $1500 on a building and $500 on furniture; that the property burned and the loss was sustained July 31, 1913; that the policy at that time was in force. She claimed damage to the building of $1.095 and $500 on the furniture in the building, which she alleged at the time was valued at $1,621.50. The defendant answered by general and special exceptions and answer, and among other things pleaded that under the policy the damage was appraised by appraisers at the amount of $398.65, and other matters not necessary to set out. The policy contained the following provision:

"In the event of disagreement as to the amount of loss the same shall be as above provided, ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire. The appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and failing to agree shall submit their differences to the umpire, and the award 'in writing of any two shall determine the amount of such loss. The parties thereto shall pay the appraisers respectively selected by them and shall bear equally the expenses of the appraisal and the umpire."

The parties in this case, after proof of loss had been made by Mrs. Kelly, failed to agree. The plaintiff in error demanded an appraisement under the policy and the parties thereto entered into an agreement, the plaintiffs in error selecting T. C. O'Reilly and defendant in error selecting Wm. Banks. In the agreement it was recited that the appraisers are to appraise the sound value and the loss and damage, and return an award in accordance with the terms and conditions of the policy. The appraisers took an oath, stating therein that they were not interested in the loss, and that they would use their best efforts to arrive at a just award. They afterwards returned an award; under the first item of the policy "Dwelling" they found loss and damage $398.65. There was no finding as to the second item, "Furniture," and no statement as to the sound value in the finding. It would appear that they used a blank form for the award and under the heading "Sound Value" nothing is stated. Mrs. Kelly, by a plea in answer to the plaintiff in error, attacked the award for irregularities, fraud, mistake, etc.

[1] The first assignment urges that the trial court was in error in refusing plaintiff in error's request to find for defendant in error only the sum of $398.65. This is the amount of the award allowed by the appraisers. It is insisted that the undisputed evidence shows there was no fraud, mistake, or accident in procuring the award. There is evidence from which it may be inferred that O'Reilly was partial and biased in favor of the plaintiff in error, and not a disinterested appraiser, and that Banks was incompetent and entirely controlled by O'Reilly, and that he was not in fact disinterested. There was no appointment of an umpire, as provided in the insurance policy. No notice was given to the parties of the time and place for appraisement, but the appraisers rejected any testimony, and refused to permit Mrs. Kelly to come before them. Their award does not pretend to appraise the damage and loss to the household goods, either those totally destroyed or partially damaged. They did not in their award state separately sound value and damages. They found only the damage to the dwelling to be $398.65. The evidence of three disinterested contractors and carpenters, who were employed by Mrs. Kelly at the instance of plaintiff, to make estimates as to the amount required to restore the building to its former condition, was, one made his estimate at $1095.60, another at $1150, and another at $1250; none placing it at less than $1095.60. The plaintiff in error also had an estimate made, but it was stated on the trial that they did not have it; however, the adjuster testified that it was over $500. The household goods destroyed and damaged amounted to over $500, the amount for which they were insured. O'Reilly, the appraiser, said he did make an itemized statement of the lumber, hardware, etc., necessary to restore the building, but that he had not kept it but destroyed it. Banks made no pretense of having done so. The award does not itemize the damages or pretend to do so. In reading the evidence in this case we are impressed that the award

is grossly inadequate and out of proportion to the actual loss on the house. This fact, with the irregularities, was sufficient we think to go to the jury, to determine whether the appraisers purposely and unjustly, in the interest of plaintiff in error, rendered the award less than the loss sustained. The clause in the policy required the appraisers selected by the parties to it, first to select a competent and disinterested umpire, and then to estimate and appraise the loss, stating separately sound value and damage; if they failed to agree to submit their differences to the umpire; the award signed by any two should determine the loss. It is doubtless true that under this provision where the appraisers agree to the award the failure alone to select an umpire would be immaterial.

[2] Under the terms of the policy, however, it is evident by the clause that the first thing to be done, and before the appraisers enter upon the work, they should select an umpire; also, that he should participate in the award. The clause that any two could determine the loss indicates such was the purpose of the agreement.

"If by the agreement of submission the arbitrators in case of disagreement are to select a third person an award by the majority to be found the person so selected is a third arbitrator for it is plain that he is to act with the arbitrators first appointed." R. C. L. vol. 2, p. 372.

While in this case the third party is designated "umpire" the very construction of the paragraph evidences he was to act with the other appraisers and if necessary, in case of disagreement, sign the award. If the agreement made the umpire an appraiser, in the sense that he should be present and sign the award in case of disagreement, it was necessary that he should have been first appointed, so he could have acted jointly with the others, and been given an opportunity to be present while considering the award. It has been held if such arbitrator is not given the opportunity to be present the award is invalid even if signed by the number of arbitrators required. Blin v. Hays, 2 Tyler (Vt.) 304, 4 Am. Dec. 738. Perhaps under the holdings of our courts the failure to comply with the agreement with reference to selecting the umpire would not render the award on that ground alone invalid, especially where there was no disagreement between the original appraisers. Forshey v. Railway Co., 16 Tex. 516. This action, however, yet evidences an irregularity which had the result of making the proceedings ex parte on the part of the appraisers. The policy had provided first for a third party who should be present and participate in the proceedings, and we believe that as a circumstance it may be looked to in considering whether the award was fair or not. Wiley v. Heard, 1 White & W. Civ. Cas. Ct. App. § 1205.

[3] There was no agreement that notice should be given of the time and place for the investigation or that either party should be present, and the fact that no notice was given and no opportunity offered to the parties to present evidence doubtless did not of itself render the award invalid. This appears to be the holding in the case of Orient Insurance Co. v. Harmon, 177 S. W. 193. It will be noted, however, that it is suggested by the court in that case that there was neither allegation nor evidence of a request by the insurance company which was denied by the arbitrators to be heard as witness or otherwise. In this case it is alleged evidence was introduced, and the jury found Mrs. Kelly was denied this right. It occurs to us that it was never the purpose, under the terms of the policy, or of the agreement, to exclude the parties from appearing before the appraiser. There is nothing on its face to show that it should be a secret investigation or appraisement. The kind of property or that part of the building destroyed, the kind of material destroyed, must necessarily be ascertained from sources outside of the view of the appraisers. Most generally it is held to cast discredit upon an award when the parties are not present. 5 Corpus Juris, § 175. We understand, of course, that an agreement may be so drawn that a hearing before arbitrators will not be implied. The agreement herein stipulates the appraisers "shall then estimate and appraise the loss, stating separately sound value and damages." The policy defines loss and damage to be synonymous. How appraisers could know the loss without some evidence before them is not clearly perceived. They must appraise what is not in their view. This must rest upon some sort of evidence; the kind of material, amount, price, etc., must be ascertained. The sound portion of the building left doubtless is in view, and might be left to the judgment of the appraisers without evidence. The contract required the sound value and damage should be stated separately. The award does not do so in this case.

Whatever this clause may mean, whether the sound value of the house before the fire or the sound value of that part of the building uninjured by the fire, in either event, the appraisers disregarded this specific direction. This might become very important. At what did they fix the value of the building before the fire? Not only were their proceedings secret and ex parte and out of the view and presence of the parties to the contract, and without an umpire, which they were first required to select and did not, but their methods were secret. The plain direction to obtain the sound value and the damage was disregarded. Their procedure suggests gross neglect and carelessness, incompetence, or an intention to omit inquiry into essential matters under the power given them. Further, the appraisers omitted to return an award on the household goods, which under the policy and

agreement they should have appraised and rendered an award. This award did not settle the issues but left the matter to be further determined by some other method. That they did not take into consideration the damage of the household goods, and did not pretend to make findings on that issue, is shown by the uncontroverted evidence. The reason for not doing so offered by O'Reilly the jury were warranted in finding unsatisfactory. American Ins. Co. v. Bell, 33 Tex. Civ. App. 11, 75 S. W. 319; Insurance Co. v. Moore, 46 S. W. 1131. All these irregularities, together with the inadequacy of the award on the building, we regard as being sufficient to authorize the finding that in making the award there was a mistake as to the amount, or that the appraisers intentionally found less than necessary to restore the building or to cover the loss on the property insured. Royal Ins. Co. v. Parlin, etc., 12 Tex. Civ. App. 572, 34 S. W. 401.

[4] The second assignment is based on the action of the court in refusing to instruct the jury that in the absence of fraud, etc., that the award for $398.65 was valid and binding. The proposition presented under this assignment is that an award is presumed to be valid and can only be overcome by evidence, etc. This may be a correct proposition of law, and, ordinarily, we think the proposition true. This case, however, was submitted upon special issues, and we think the charge requested for that reason was properly refused. Under the clause in the policy the agreement of the parties, the oath of the appraisers, and the award show they did not proceed as directed. They did not select an umpire and did not find separately the sound value and damages, and did not appraise part of the property covered by the policy. On the face of the proceedings the award was irregular, if not actually void. The Bell and Moore Cases, supra. Unassailed, the award may have been presumed regular; under the evidence and from the face of the proceedings on the award its regularity was challenged, to say the least of it. We believe the court properly refused the charge requested.

[5] We think the issue refused, of which the third assignment complains, that is asking the jury to state whether the award was valid, was properly refused. This was, we think, a question of law and fact. Authorities supra; Adams v. New York Co., 85 Iowa, 6, 51 N. W. 1149; Canfield v. Watertown Co., 55 Wis. 419, 13 N. W. 252. We regard the issues of fact submitted by the court to have covered the issue of fact involved in the requested issue.

[6] There was no error in refusing the charge of which complaint is made under the fifth assignment. There was no ground alleged or submitted to the jury as to whether Mrs. Kelly knew the contents of the policy. Her mere casual statement that, when called on by plaintiff's agent for appraisement, and

requested to read the contract she did not then know the clause was therein, but that she then read it. She did not claim to be deceived nor did she make any complaint on that ground. This casual remark is not at all likely to have influenced the jury. We think there was no necessity for the charge and no injury is shown.

[7] The fourth, sixth and seventh assignments are overruled. The plaintiff in error requested the court to submit, "Did the appraisers make a fraudulent award?" If they should answer in the affirmative, then, "In what particular was same fraudulent?" Instead of those issues the court submitted:

"Did the appraisers, in awarding to the insured $398.65, on account of loss and damage to the building, intentionally allow her less under said item of the policy than it would cost to repair or replace the same with material of like kind and quality?"

The jury answered this issue in the affirmative. The court, we think, by the issue submitted the question of fraud on the part of the arbitrators, and asked the jury to find in what it consisted. If the appraisers intentionally so acted we believe that the court, as a matter of law, should declare fraud thereon. There are facts which would justify this finding as heretofore suggested by us.

By the eighth assignment it is urged that it was error to refuse requested instruction No. 5, which is to the effect that the measure of damages should not exceed the actual cash value of the property destroyed or damaged at the time, with proper deductions for depreciation, and not to exceed what it would cost to replace the property with material of like kind.

[8, 9] The ninth assignment complains that issue No. 3 submitted by the court should not have been submitted, which is as follows:

"What would it have cost the insured immediately after the fire to repair or replace the building with material of like kind and quality?"

As to the personal property destroyed the court required the jury to find its actual cash value and also the actual damage to that injured. The provision of the policy relied upon is to the effect the company should not be liable beyond the actual cash value of the property at the time of the loss or damage, to be ascertained according to actual cash value, with proper deduction for depreciation, and not to exceed what it would then cost the insured to repair or replace the same with material of like kind and quality. It seems to us a recovery could not be had beyond the actual cash value, with deduction for depreciation. However, this case was submitted upon special issues, and we believe under the statute, article 1984a, Vernon's Sayles' Civil Statutes, the plaintiff in error should have requested a special issue to the jury to find the actual cash value of the building at the time of the loss, and in

doing so to make proper allowance for depreciation. Calvin v. Neel, 191 S. W. 791, 794.

[10] The cash value of the building at the time of the loss was an issue of fact, which, if plaintiff in error desired a finding of the jury upon, he should have requested by a proper issue. Under the policy it was a question of fact more than a question of law. By not requesting a finding on the facts the plaintiff practically left the question to the court to find the cash value. The issue as to what it would have cost the insured to then repair the building was also an issue of fact which the court, by the third issue, left to the jury. There is no such error assigned in this particular as will require a reversal of the case.

The tenth, eleventh, and twelfth assignments are overruled. We believe our general discussion sufficiently disposes of the issues here requested.

[11] The thirteenth, fourteenth and fifteenth assignments are overruled. We think there is evidence of Mrs. Kelly that she was not permitted to be present before the appraisers. Our discussion of the first assignment sufficiently gives our view on the question here presented. The contract by its terms did not exclude the defendant in error from going before the appraisers, and it occurs to us she was within her rights in going before them and making the request to be heard. We also cite, in addition to the above authorities, Redner v. Insurance Co., 92 Minn. 306, 99 N. W. 886; Harth v. Insurance Co. (Ky.) 102 S. W. 242.

[12] The sixteenth assignment urges the court should have submitted the issues as requested, that is whether the adjuster told Mrs. Kelly she might remove all of her furniture from the premises. In the first place, the policy did not forbid her removing the furniture after the fire. The testimony shows she did store a part of her furniture with her son after the fire. Steele, the adjuster, told her, as testified to by him, that the goods not damaged, for which no damages were claimed, could be moved but the other ought to be where they could be examined. There is no evidence or allegation that she secreted any of the property or placed it where it could not be examined. The issue as requested we think was immaterial.

The seventeenth and eighteenth assignments are overruled. The issue as submitted has support in the evidence to the effect that the appraisers made a mistake as to the amount necessary to restore the building.

The nineteenth and twentieth assignments are overruled. We do not think that the issues here objected to improperly single out certain issues of fact. There was evidence that there were household goods totally destroyed, and goods not destroyed, but damaged. It is unnecessary to review the evidence on these issues.

[13, 14] By the twenty-first assignment it is urged the court should have submitted the issue requested, whether Mrs. Kelly objected to the award. The fact that she instituted suit on the policy and does not rely on the award, but ignored it and assails it as unjust and obtained by fraud and partiality of the appraisers, is sufficient to show that she objected to it, and there was no necessity of submitting that issue. The issue made by the pleadings was whether she objected to it within a reasonable time. This issue was not requested to be submitted. Her laches in this particular are not alleged or proven so as to operate as an estoppel. It is not shown that the plaintiff in error was deprived of the right to demand a second appraisement by her conduct, if it ever had such right under the policy. By standing on the validity of the award the plaintiff has waived a further right to demand additional appraisement. Insurance Company v. Bell, 33 Tex. Civ. App. 11, 75 S. W. 319.

The twenty-second and twenty-third assignments are overruled for the reason above given, and because it does not appear that plaintiff ever tendered the amount due to Mrs. Kelly under the award or placed her in default. The evidence tends to establish without controversy that Mrs. Kelly at all times repudiated the findings of the appraisers. The plaintiff cites us to no evidence in the record, or that any was offered that she at any time accepted the award, or that plaintiff ever offered to perform by paying the award. We think no injury is shown by refusing the requested issues.

Assignments from 24 to 27, inclusive, urge that the findings of the jury manifest passion and prejudice. We think not, but believe the jury on all the issues had evidence to support their finding.

We find no reversible error in the case, and it will be affirmed.